## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM KELSEY HUTCHINGS, JR. and
BARRIE DEMPSEY,
individually and as the representatives of a
class of similarly-situated persons,

    *Plaintiffs,*

  v.

LUSHA SYSTEMS, INC.,

    *Defendant.*

Civil Action No.:

**CLASS ACTION COMPLAINT**

Plaintiffs William Kelsey Hutchings, Jr. and Barrie Dempsey ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, bring this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (the Colorado Prevention of Telemarketing Fraud Act or "PTFA") against Defendant Lusha Systems, Inc. ("Defendant" or "Lusha"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, which are based on personal knowledge.

### <u>NATURE OF THE ACTION</u>

1. On May 27, 2005, HB05-1288[1] was signed into law, amending the PTFA to prohibit listing a cellular telephone number in a directory for a commercial purpose without

---

[1] Colorado House Bill 05-1288, Final Act,
https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont3/1BB0D3E00348AC6987256F90007C20C7?open&file=1288_enr.pdf.

affirmative consent. *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).[2] The amendment took effect on September 1, 2005. *Id.*

2.      This amendment to the PTFA was designed to protect the privacy of cellular telephone numbers, as demonstrated by former Colorado State Representative Mark Cloer's public comments on the provision: "Most people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important. Most users would find a sales call to be an intrusion . . . ."[3]

3.      The Colorado legislature enacted subsection (4) of the PTFA to specifically address privacy concerns of cellular telephone users and protect cellular telephone users from the misappropriation of their personal information, in keeping with the overall purpose of the PTFA:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

Colo. Rev. Stat. § 6-1-301.

4.      Colo. Rev. Stat. § 6-1-304(4)(a) thus provides: "On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has

---

[2] Colorado House Committee on Business Affairs and Labor, Bill Summary for HB05-1288, https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?.
[3] 9News, "Legislative Library: Feb. 23, 2005," https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]"

5.      In direct violation of Colo. Rev. Stat. § 6-1-304(4), Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-profit directory, without requesting or receiving affirmative consent to post such listings, as required by the law.

6.      Defendant has profited from its unauthorized commercial listing of Plaintiffs' and Class Members' cellular telephone numbers and other personal information while putting the privacy rights of Coloradans at risk.

7.      A Federal Trade Commission ("FTC") report on Data Brokers outlines the many risks inherent in misappropriating personal information of consumers, as Defendant has done here:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm.[4]

8.      In light of these significant risks and the overall purpose of PTFA subsection (4), Plaintiffs bring this action to prevent Defendant from further violating his privacy rights and the rights of thousands of other Colorado cellular telephone users while also seeking to recover statutory damages from Defendant pursuant to Colo. Rev. Stat. 6-1-305(1)(c).

---

[4] FTC, "Data Brokers: A Call for Transparency and Accountability,"
https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf.

## PARTIES

9. Plaintiff William Kelsey Hutchings, Jr. ("Hutchings") is and at all times relevant to this action, has been an individual resident of Colorado who has resided in Littleton, Colorado. Hutchings's cellular telephone number was listed by Defendant in Defendant's directory, available at Lusha.com, for the commercial purpose of advertising and/or selling products and services. Defendant never requested—and Hutchings never provided—affirmative consent to the listing of his cellular telephone number by Defendant, by written, oral, electronic, or other means. Hutchings has no relationship with Defendant whatsoever, and Hutchings had no reasonable ability to discover Defendant's use of his cellular telephone number until shortly before filing the present action.

10. Plaintiff Barrie Dempsey ("Dempsey") is and at all times relevant to this action, has been an individual resident of Colorado who has resided in Denver, Colorado. Dempsey's cellular telephone number was listed by Defendant in Defendant's directory, available at Lusha.com, for the commercial purpose of advertising and/or selling products and services. Defendant never requested—and Dempsey never provided—affirmative consent to the listing of her cellular telephone number by Defendant, by written, oral, electronic, or other means. Dempsey has no relationship with Defendant whatsoever, and Dempsey had no reasonable ability to discover Defendant's use of her cellular telephone number until shortly before filing the present action.

11. Defendant Lusha is incorporated under the laws of Delaware and maintains its corporate headquarters in Boston, Massachusetts. Defendant operates the online directory

Lusha.com, where Defendant has listed the cellular telephone number of Plaintiffs and thousands of other Coloradans.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action in which the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs; there are over 100 members in the putative class; both Plaintiffs are citizens of this state and Defendant is a Delaware corporation with its principal place of business in Massachusetts, satisfying CAFA's minimum diversity requirement.

13.     This Court has personal jurisdiction over Defendant because Defendant conducts business in this District and some of the unlawful conduct alleged in the Complaint occurred in and/or was directed to it.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this District and because a substantial part of the events or omissions giving rise to the claims of Plaintiffs occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.  Defendant's Directory

15.     Defendant is a for-profit data broker. Data broker companies "collect consumers' personal information and resell or share that information with others[.]"[5]

---

[5] FTC, "Data Brokers: A Call for Transparency and Accountability," https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf.

16.     Specifically, Defendant provides online "people search" (also known as "people finder") services. As such, Defendant specializes in compiling vast amounts of information about individuals from various sources.[6]

17.     Defendant monetizes its services by compiling the personal information of individuals and listing that information in a directory. While Lusha users are allowed to create free accounts and receive limited access to individuals' contact data, further access is gated behind a subscription paywall. Lusha users are shown that they have a limited number of "credits," and to access more records or unlock full contact details, including mobile numbers, they must upgrade to a paid plan:



---



18.     Defendant's directory is available at Lusha.com. Visitors to Defendant's directory are able to access first and last names, emails, titles, office and cellular phone numbers of Coloradans, among other information, either for a limited time through free access or indefinitely with a paid subscription to the directory:



19.    Paid subscription pricing tiers for Lusha begin at around $37 and scale up to $59, in addition to custom packages:



20.    Defendant's directory allows users to sort for a range of criteria, including geographic location and various categories of contact information. This allows users to filter results in Defendant's directory for individuals from Colorado, as well as for individuals whose cellular telephone numbers have been collected by Defendant in the same search:





21.    After filtering for these parameters, a Lusha user is furnished with a list of search results. Each result corresponds to an actual person whose personal information matches the criteria selected by a Lusha user:



22.     Defendant's free, limited previews of its directory likewise allows users to filter results by location (e.g., Colorado) and view the type of information included in a record (e.g., cellular telephone number):



23.    The filtering and tagging capabilities on Defendant's directory demonstrate that Defendant knowingly lists cellular telephone numbers of Coloradans. Once the "Contact Location" and "Contact Details—Mobile" filters are applied and a user conducts a search, Lusha provides that user with a list of individuals who are both (a) located in Colorado and (b) have their cellular telephone number listed on Defendant's directory.

24.    Defendant provides limited, free access to its directory—including the targeted search parameters—to entice users to purchase unlimited access to Defendant's full directory. Defendant provides cellular telephone numbers as part of this limited, free access to encourage users to purchase its full directory.

25.    Defendant clearly has a commercial purpose in listing the cellular telephone numbers of Plaintiffs and thousands of other Coloradans—both for free and under a paid

subscription—either as advertising for its directory or as a service exchanged for a paid subscription to the directory.

**B.    Defendant's Listing of Cellular Telephone Numbers Harms Coloradans**

26.    Consumer data is a key component of modern marketing and business strategy.[7] In fact, surveys of CEOs routinely emphasize the critical, high value role of consumer data. PwC's 28th Annual Global CEO Survey, published in March 2019, indicated that data was the most important consideration for their companies,[8] and showed that 94% of CEOs surveyed consider data on consumers to be critical or important to their businesses.[9]

27.    Defendant's misappropriation of Plaintiffs' and thousands of other Coloradans' cellular telephone numbers thus deprives these individuals from the real, quantifiable value of their data and deprives them of their rights under the PTFA.

28.    There are additional harms inherent in having one's personal data misappropriated by online directories and data broker sites. Phone scams are one common example, in which scammers employ various methods to cheat people out of money by taking their payment information and other personal details over the phone. The FTC warns consumers about numerous categories of common phone scams, including: (1) impersonator scams that involve scamming

---

[7] *See, e.g.*, Nielsen, "Understanding, Valuing, and Utilizing Consumer Data," https://nielseniq.com/global/en/info/consumer-data/#:~:text=The%20value%20of%20consumer%20data,customer%20experience%20are%20key%20differentiators ("[c]onsumer data is the lifeblood of modern business strategy . . . [t]his data is not just numbers and statistics; it's a narrative of consumer lives, telling stories that businesses can use to tailor their strategies . . . [t]his understanding is crucial in today's competitive market, where personalization and customer experience are key differentiators.").

[8] Forbes, "New PwC Survey Reveals Consumer Data is the Most Highly Valued," https://www.forbes.com/sites/andrewbusby/2019/03/04/new-pwc-survey-reveals-consumer-data-is-the-most-highly-valued/.

[9] PwC, 28th Annual Global CEO Survey, https://www.pwc.com/gx/en/issues/c-suite-insights/ceo-survey.html.

individuals by pretending to be a government agency or a loved one; (2) debt relief and credit repair scams, in which scammers offer to lower credit card interest rates, fix credit scores, or forgive student loans; (3) business and investment scams, in which scammers promise to help individuals start their own businesses or guarantee profits from investments; (4) charity scams, in which scammers pose as real charities and ask for fraudulent donations for disaster relief or local law enforcement; (5) extended car warranty scams; (6) "free trial" scams; (7) loan scams; (8) prize and lottery scams; and (9) travel scams and timeshare scams.[10]

29.    Scams and the misappropriation of personal data extracted from the internet have been directly linked to people search sites and directories like the one maintained by Defendant.[11] And beyond financial scams, the misappropriation of personal data and contact information can even potentially increase the risk of victimization by stalkers and perpetrators of domestic violence and other forms of abuse.[12]

30.    Moreover, vulnerable populations, such as the elderly and individuals with disabilities, are particularly susceptible to being targeted and taken advantage of by phone scammers. The FBI estimates that millions of elderly Americans fall victim to some type of

---

[10] FTC Consumer Advice, "Phone Scams," https://consumer.ftc.gov/articles/phone-scams.

[11] *See, e.g.*, Consumer Reports, "Evaluating People-Search Site Removal Services," https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf ("People-search sites put ordinary people at risk of fraud, identity theft, scams, and even stalking and other forms of harassment."); Fox News, "The dangerous intersection of people search sites and scams," https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams (outlining how people search sites can enable scammers to find victims, create detailed profiles of individuals, and launch targeted phishing attacks to probe for sensitive information);

[12] *See, e.g.*, Voices of Women, "The Dangers of People Search Sites," https://vownow.org/2020/10/the-dangers-of-people-search-sites/; FTC, "Data Brokers: A Call for Transparency and Accountability," https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf.

financial fraud each year,[13] and a 2024 FTC report found that "[t]he amount of money victims lose through fraud increases with age," with adults in their 70s losing a median of $1,000 per instance of fraud, more than double the $497 median loss per instance of fraud across all ages.[14] According to the National Council on Aging, "[f]raudsters and con artists tend to go after older adults," and three out of the five most common fraudulent schemes perpetrated against older Americans involve phone scams.[15] The Social Security Administration itself describes Social Security fraud, in which scammers use targeted tactics—including phone calls—to deceive elderly and disabled individuals into providing sensitive information or money, as "widespread."[16]

31.    As with other age groups, the ownership rate of cellular telephones among elderly Americans is increasing. A November 2024 Pew Research study found that 98% of Americans owned a cellular telephone of some kind, up from 67% in December 2005, shortly after the PTFA was amended to include subsection (4).[17] As of 2024, 94% of Americans aged 65 and older used a cellular telephone.[18]

32.    Studies indicate that Americans are highly concerned about the security risks associated with the misappropriation of their personal data. According to a 2023 Pew Research

---

[13] FBI, "Elder Fraud," https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/elder-fraud.

[14] AARP, "$12.5 Billion Reported Lost to Scams and Fraud in 2024, Older Adults Hit Hard," https://www.aarp.org/money/scams-fraud/older-adults-ftc-fraud-report.html#:~:text=The%20FTC%20found%20that%20among,ages%20in%202024%20was%20%24497.

[15] National Council on Aging, "The Top 5 Financial Scams Targeting Older Adults," https://www.ncoa.org/article/top-5-financial-scams-targeting-older-adults/ (listing three types of common fraudulent schemes involving phone calls: the "grandparent scam," "financial services scam," and "government impersonation scams").

[16] Social Security Administration, "Social Security and Scam Awareness," https://blog.ssa.gov/social-security-and-scam-awareness/.

[17] Pew Research Center, "Mobile Fact Sheet," https://www.pewresearch.org/internet/fact-sheet/mobile/.

[18] *Id.*

poll, most Americans are concerned about how companies and the government use their information.[19] Americans increasingly state that they do not understand what companies are doing with their data (67% say they "understand little to nothing about what companies are doing with their personal data"), and most Americans believe "they have little to no control over what companies [73%] and the government [79%] do with their data."[20]

## CLASS ALLEGATIONS

33.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals (the "Class" or "Class Members"), defined as follows:

> All persons who were Colorado residents on or before three (3) years prior to the filing of this complaint through and including the date of resolution at the time Defendant listed their cellular telephone number(s) in its directory for sale on Lusha.com

34.    The following people are excluded from the Class: (i) any Judge presiding over this action and members of her or her family; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiffs' counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

---

[19] Pew Research, "How Americans View Data Privacy," https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/.

[20] *Id.*

35.     Plaintiffs reserve the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the action.

36.     ***Numerosity***. Members of the Class are so numerous that joinder of all Class Members is impractical. Based on refined searches conducted on the Lusha directory, the number of persons in the class is estimated to be in the thousands. Additionally, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.

37.     ***Commonality and predominance***. A well-defined community of interest exists in the questions of law and fact involved in this action. Questions of law and fact common to the members of the Class that predominate over questions affecting only individual Class Members include, but are not limited to, the following:

(a)     Whether Defendant violated Colo. Rev. Stat. § 6-1-304(a)(I); and

(b)     Whether Plaintiffs and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of the suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

38.     ***Typicality***. Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, had their cellular telephone number listed on the Lusha directory for a commercial purpose; Defendant listed Plaintiffs' cellular telephone number on the directory without Plaintiffs' affirmative consent (either written, oral, electronic, or by other means); and Defendant's misappropriation of Plaintiffs' personal data (including its economic value) was at the expense of Plaintiffs' PTFA privacy rights.

17

39.     *Adequacy*. Plaintiffs will adequately safeguard the interests of the Class Members, as Plaintiffs' interests align with, and do not contradict, those of the Class. Plaintiffs' counsel has experience in handling class action litigation, including consumer privacy. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

40.     *Superiority*. A class action is the most effective, efficient and fair way to resolve this dispute, as individual litigation by all Class Members is impractical and would overburden the court system. It would also risk inconsistent judgments and increase delays and expenses for all involved parties. In contrast, proceeding as a class action presents few management challenges, conserves resources, and protects the rights of each Class member. Plaintiffs expect no difficulties in managing this case as a class action.

## CAUSE OF ACTION

**Violation of the Prevention of Telemarketing Fraud Act**
**(Colo. Rev. Stat. § 6-1-304(4)(a)(I))**
**(On Behalf of Plaintiffs and the Class)**

41.     Plaintiffs incorporate the above paragraphs by reference and state:

42.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

43.     Colo. Rev. Stat. § 6-1-304(4) provides:

(a)     On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

(I)     Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

44.     Defendant knowingly lists Coloradans' cell phone numbers, including Plaintiffs.' Defendant provides search parameters that can be used to specifically target Coloradans and their cellular telephone numbers, through the "Contact Location" and "Contact Details—Mobile" tags, which can be used to filter search results.

45.     Defendant's website, Lusha.com, is a directory. A "directory," according to Oxford Learner's Dictionaries, is a "book or electronic resource containing lists of information . . . for example people's phone numbers or the names and addresses of businesses in a particular area."[21] Indeed, Lusha refers to itself as "more than just a directory of company phone numbers," and it clearly fits the dictionary definition of the term, as it is a resource containing a list of information that includes individuals' phone numbers:



46.     Defendant lists cellular telephone numbers in its directory for a commercial purpose. Defendant lists personal information, including cellular telephone numbers, on Lusha.com to entice potential customers to purchase access to Defendant's full directory, which is available at a subscription cost and also lists Coloradans' cellular telephone numbers, including Plaintiffs.'

---

[21] Oxford Learner's Dictionaries, "Directory," https://www.oxfordlearnersdictionaries.com/definition/english/directory; *see also* Cambridge, "Directory," https://dictionary.cambridge.org/us/dictionary/english-italian/directory#google_vignette (defining a "directory" as "a book or list of names and numbers").

47.     Defendant neither requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing" of their cellular telephone numbers. Colo. Rev. Stat. § 6-1-304(4)(a)(I). Rather, Defendant routinely lists the cellular telephone numbers of Coloradans they have never engaged with, have had no connection or relationship to, and who are completely unaware of Defendant.

48.     Defendant's misappropriation of Plaintiffs' and Class Members' personal data (including its economic value) comes at the expense of Plaintiffs' and Class Members' privacy rights under the PTFA. Defendant's conduct deprived Plaintiffs and Class Members of the real, quantifiable value of their data, and it exposed Plaintiffs and Class Members to elevated risks of harassment, stalking, scams, identity theft, and unwanted telemarketing calls.

49.     Thus, on behalf of themselves and the Class, Plaintiffs seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars ($300) and not more than five hundred dollars ($500) for each first offense, and at least five hundred dollars ($500) and not more than one thousand dollars ($1,000) for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(a)(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that this Court grant judgment against Defendant as follows:

(a)     An order certifying the Class, naming Plaintiffs as representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)    An order declaring that Defendant's conduct, as described above, violates Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c)    An order awarding Plaintiffs and Class Members statutory damages pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars ($300) and not more than five hundred dollars ($500) for each first offense, and at least five hundred dollars ($500) and not more than one thousand dollars ($1,000) for each second or subsequent offense;

(d)    An order awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including *inter alia* an Order requiring Defendant to comply with the PTFA;

(e)    An order awarding Plaintiffs and the Class their reasonable attorney's fees and expenses and costs of suit pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f)    An order awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

(g)    An order awarding such other and/or further relief as the Court may deem just and proper.

Dated: June 18, 2025

Respectfully submitted,

William Kelsey Hutchings, Jr. and Barrie Dempsey, individually and as the representatives of a class of similarly-situated persons

*/s/ Brian J. Wanca*
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
E-mail: bwanca@andersonwanca.com

*Attorney for Plaintiffs*